1

2

3

4

5

6

7

8            IN THE UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10   ROBERT CAMPO,

11            Petitioner,              No. CIV S-06-1662 DAD P

12        vs.

13   K. PROSPER, Warden,

14            Respondent.              <u>ORDER</u>

15   _____/

16            Petitioner is a state prisoner proceeding pro se with a petition for a writ of habeas

17   corpus pursuant to 28 U.S.C. § 2254.  The parties previously consented to Magistrate Judge

18   jurisdiction for all purposes.  <u>See</u> 28 U.S.C. § 636 (c).  Petitioner challenges a 2004 prison

19   disciplinary conviction for possession of inmate manufactured alcohol and a resulting loss of 120

20   days of time credits.  He claims that prison officials failed to provide him with the proper

21   procedural safeguards at his administrative hearing and found him guilty of the rules violation

22   based on false evidence and false testimony, in violation of his Fourteenth Amendment right to

23   due process.  Upon careful consideration of the record and the applicable law, the undersigned

24   will deny petitioner's application for habeas corpus relief.

25   /////

26   /////

1

BACKGROUND

Petitioner is serving a prison term of 27 years-to-life following his 1985 convictions for murder and kidnapping.  (Pet. at 1.)

On November 16, 2004, Correctional Officer Harwood wrote a rules violation report charging petitioner with "manufacturing alcohol."  (Pet., Ex. D.)  Officer Harwood alleged the following.  On November 16, 2004, he conducted a search of petitioner's cell for inmate manufactured alcohol.  (Id.)  He noticed a strong odor of alcohol in the cell and found a plastic garbage bag containing what appeared to be "the remnant of Inmate Manufactured Alcohol (pulpy substance with a strong odor of alcohol)."  (Id.)  Petitioner and his cell mate were placed in handcuffs and escorted to a prison office.  (Id.)  During the escort, both inmates "exhibited signs of intoxication such as strong odor of alcohol on their bodies and staggering (it should be noted that inmate Campo was staggering bad enough that the escort was stopped on two occasions due to Campo possibly falling)."  (Id.)  Both inmates were informed they would "have to submit to urinalysis for probable cause," but they refused to do so.  (Id.)

The November 16, 2004, rules violation report was issued to petitioner on November 29, 2004.  (Points and Authorities attached to Pet. (P&A) at 6.)  On December 6, 2004, prison officials re-issued the rules violation report to petitioner, with the charge amended to "possession of alcohol."  (Id.; Pet., Ex. D.)  On December 7, 2004, the disciplinary hearing on the rules violation report commenced.  (Pet., Ex. D.)  Petitioner was advised of the charges against him and the purpose of the hearing.  (Id.)  Petitioner did not object to proceeding with the hearing. (Id.)  Petitioner requested additional time to complete his written statement.  (Id.)  This request was granted and the hearing was continued to the next day.  (Id.)

On December 8, 2004, the disciplinary hearing resumed.  (Id.)  Petitioner pled not guilty to the charge against him, stating, "I did not possess any alcohol and no alcohol was discovered in my cell."  (Id.)  He also "submitted seven written pages as testimony/evidence."  (Id.)  Petitioner requested five witnesses "to testify specifically that he did not stagger in any

1    way."  (Id.)  The hearing officer agreed to stipulate that those witnesses would so testify.  (Id.)

2    Petitioner also requested the "yard camera videotape," but this request was denied because the

3    videotape had been recorded over and was no longer available.  (Id.)  Officer Harwood was

4    called as a witness at the hearing.  (Id.)  He described the contents of the plastic bag found in

5    petitioner's cell and stated that Sergeant Brown verified those contents.  (Id.)  Petitioner was

6    found guilty of the Division C offense of "possession of alcohol" and was assessed a time credit

7    forfeiture of 120 days.  (Id.)

8                       On August 16, 2005, petitioner challenged his disciplinary conviction in a petition

9    for writ of habeas corpus filed in the Lassen County Superior Court.  (Answer, Ex. 1.)  The

10   Superior Court rejected petitioner's claims, ruling as follows:

11                       Petitioner, in the custody of the California Department of
                         Corrections at the California Correctional Center (CCC), alleges he
12                       was wrongfully found guilty of possession of inmate-manufactured
                         alcohol in disciplinary proceedings at that institution on 12/07/04.
13                       He alleges he was deprived of due process in that CCC personnel
                         failed to provide him with a cell search receipt, a videotape
14                       requested was not available, and favorable witnesses were not
                         allowed.  The record of the proceedings reflects that the testimony
15                       of those witnesses was stipulated by the SHO.

16                       No showing of a denial of due process is made.  The court will not
                         re-weigh the evidence adduced at the in-prison disciplinary
17                       proceedings.  The petition fails to show that there is no evidence to
                         support the findings (Superintendent v. Hill (1985) 472 U.S. 445;
18                       Sultan Turkish Bath, Inc. v. Police Commissioners (1959) 169
                         Cal.App.2nd 188) and the petition for writ of habeas corpus is
19                       denied.

20   (Answer, Ex. 2.)

21                       On January 23, 2005, petitioner filed a petition for writ of habeas corpus in the

22   California Court of Appeal for the Third Appellate District.  (Answer, Ex. 3.)  That petition was

23   summarily denied by order dated January 26, 2006.  (Answer, Ex. 4.)  Subsequently, petitioner

24   filed a petition for writ of habeas corpus in the California Supreme Court.  (Answer, Ex. 5.)  That

25   petition was summarily denied by order dated April 26, 2006.  (Answer, Ex. 6.)

26   /////

ANALYSIS

I.  Standards of Review Applicable to Habeas Corpus Claims

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of some transgression of federal law binding on the state courts.  See Peltier v. Wright, 15 F.3d 860, 861 (9th Cir. 1993); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v. Isaac, 456 U.S. 107, 119 (1982)).  A federal writ is not available for alleged error in the interpretation or application of state law.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000); Middleton, 768 F.2d at 1085.  Habeas corpus cannot be utilized to try state issues de novo.  Milton v. Wainwright, 407 U.S. 371, 377 (1972).

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d 1062, 1067 (9th Cir. 2003).  The following standards govern the granting of habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v. Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001).  If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims.  Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008).  See also Frantz v. Hazey, 513 F.3d 1002, 1013 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1)

1  error and that, if there is such error, we must decide the habeas petition by considering de novo

2  the constitutional issues raised.").

3          The court looks to the last reasoned state court decision as the basis for the state

4  court judgment.  Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  If the last reasoned

5  state court decision adopts or substantially incorporates the reasoning from a previous state court

6  decision, this court may consider both decisions to ascertain the reasoning of the last decision.

7  Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc).  Where the state court

8  reaches a decision on the merits but provides no reasoning to support its conclusion, a federal

9  habeas court independently reviews the record to determine whether habeas corpus relief is

10 available under § 2254(d).  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Pirtle v.

11 Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).  When it is clear that a state court has not reached

12 the merits of a petitioner's claim, or has denied the claim on procedural grounds, the AEDPA's

13 deferential standard does not apply and a federal habeas court must review the claim de novo.

14 Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003).

15 II.  Petitioner's Claims

16         Petitioner raises several claims in the instant petition.  First, he claims that his

17 rules violation conviction was obtained through the use of false and fabricated evidence.  (P&A

18 at 7.)  In this regard, he alleges that the rules violation report authored by Officer Harwood was

19 "falsified."  (Id. at 11.)  In support of this argument, petitioner has attached a copy of a document

20 entitled "worksheet," authored by Correctional Officer J. Crawford.  (Pet., Ex. G.)  The

21 worksheet appears to be a draft of a rules violation report.  In the worksheet, Officer Crawford

22 explains that he conducted a search of petitioner's cell on November 16, 2004, and confiscated

23 what appeared to be inmate manufactured alcohol.  (Id.)  The allegations in the worksheet are

24 identical to the allegations in the rules violation report authored by Officer Harwood, except that

25 Officer Harwood's report adds the allegations that petitioner and his cellmate were escorted to a

26 prison office after the alcohol was discovered; that petitioner staggered, and almost fell, while

1   being escorted; and that petitioner and his cellmate refused to submit to a urinalysis test.

2   (Compare Pet., Ex. G with Pet., Ex. D.)  The rules violation report states that Harwood

3   conducted the search of petitioner's cell and discovered the contraband, whereas the worksheet is

4   written in the first person and therefore suggests that Officer Crawford may have conducted the

5   search of petitioner's cell and discovered the contraband.  The worksheet indicates that it was

6   signed, or approved, by Officers Brown and Riley on November 18, 2004.  (Pet., Ex. G.)  The

7   rules violation report is dated November 16, 2004.  (Pet., Ex. D.)

8          Based on the foregoing, petitioner argues that: (1) Officer Harwood "falsified" the

9   rules violation report, "alter[ed] the report from its original draft," and "knowingly gave false

10  statements;" (2) the "original approved reporting officer was J. Crawford not C.O. R. Harwood;"

11  (3) Officer Harwood generated ("back dated") his rules violation report on November 16, 2004,

12  prior to the date the rough draft was approved by Officers Brown and Riley on November 18,

13  2004; (4) Officer Harwood added incriminating and false details to his rules violation report that

14  were not contained in Officer Crawford's rough draft; and (5) during his testimony at the

15  disciplinary hearing, Officer Harwood "used his experience to cloud the judgment" of the

16  disciplinary hearing officer.  (P&A at 11, 17, 18.)  In sum, petitioner claims that Officer Harwood

17  "filed a fraudulent report against petitioner, then using his years of experience included

18  incriminating statements to the report convincing the SHO to disregard any and all evidence, and

19  find guilt based solely on his given testimony."  (Id. at 12.)  Petitioner argues that these events

20  demonstrate the evidence against him was "fraudulent" and "deceitful" and that Officer Harwood

21  acted in "bad faith" and in violation of petitioner's right to due process.  (Id.)

22         Petitioner also claims that his request at the disciplinary hearing for the production

23  of documentary evidence was improperly denied.  (Id. at 6 & Exs. D, E.)  A review of the record

24  reflects that petitioner submitted seven handwritten pages of "testimony/evidence" at the

25  disciplinary hearing.  (Pet., Ex. D at 2, Ex. E.)  Included in that seven-page document is a section

26  entitled "evidence requested," in which petitioner requests: (1) the video from the exercise yard

1   at the time of the relevant events; (2) the results of a sobriety test which he alleges was

2   administered on November 16, 2004; (3) the receipt for the search of petitioner's cell; (4) the

3   original handwritten drafts of the rules violation report at issue; and (5) the "log sheet" reflecting

4   the authors of any drafts of the rules violation report.  (Pet., Ex. E at 6.)  Apparently, none of

5   these requests for production was granted at the disciplinary hearing.  Petitioner argues that the

6   requested items "fall short of being hazardous to the institutional safety and should have been

7   allowed under the tenets of Due Process."  (P&A at 9.)  He alleges that he was "denied access to

8   everything that he requested violating his basic right to due process."  (Traverse at 7.)  Petitioner

9   contends that his inability to obtain this discovery, and particularly the draft rules violation report

10  described above and attached as Exhibit G to the petition, prevented him from presenting a

11  "competent defense."  (P&A at 10.)

12          Petitioner further claims that the failure of prison officials to give him a receipt

13  documenting the items found in his cell ("cell search slip"), and their failure to include in the

14  rules violation report any verification that a correctional "superior" confirmed that a fermented

15  liquid was found in petitioner's cell, violated California regulations.  (Id. at 13.)

16  III.  Applicable Law

17          It is well established that inmates subjected to disciplinary action are entitled to

18  certain procedural protections under the Due Process Clause but are not entitled to the full

19  panoply of rights afforded to criminal defendants.  Wolff v. McDonnell, 418 U.S. 539, 556

20  (1974); see also Superintendent v. Hill, 472 U.S. 445, 455-56 (1985); United States v. Segal, 549

21  F.2d 1293, 1296-99 (9th Cir. 1977) (observing that prison disciplinary proceedings command the

22  least amount of due process along the prosecution continuum).  An inmate is entitled to advance

23  written notice of the charge against him as well as a written statement of the evidence relied upon

24  by prison officials and the reasons for any disciplinary action taken.  See Wolff, 418 U.S. at 563.

25  In the disciplinary hearing context, an inmate does not have a right to counsel, retained or

26  appointed, although illiterate inmates are entitled to assistance.  Id. at 570.

7

1       An inmate has a right to a hearing at which he may "call witnesses and present

2   documentary evidence in his defense when permitting him to do so will not be unduly hazardous

3   to institutional safety or correctional goals."  Wolff, 418 U.S. at 566.  See also Ponte v. Real, 471

4   U.S. 491, 495 (1985).  "Prison officials must have the necessary discretion to keep the hearing

5   within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or

6   undermine authority, as well as to limit access to other inmates to collect statements or to

7   compile other documentary evidence."  Wolff, 418 U.S. at 566.  Prison officials may, but are not

8   required to, explain their reasons limiting an inmate's efforts to defend himself.  Ponte, 471 U.S.

9   at 497.  As a general rule, inmates "have no constitutional right to confront and cross-examine

10  adverse witnesses" in prison disciplinary hearings.  Id. at 510 (Marshall, J., dissenting).  See also

11  Baxter v. Palmigiano, 425 U.S. 308, 322-23 (1976).

12      The disciplinary hearing must be conducted by a person or body that is

13  "sufficiently impartial to satisfy the Due Process Clause."  Wolff, 418 U.S. at 571.  The decision

14  rendered on a disciplinary charge must be supported by "some evidence" in the record.  Hill, 472

15  U.S. at 455.  A finding of guilt cannot be "without support" or "arbitrary."  Id. at 457.  The

16  "some evidence" standard is "minimally stringent," and a decision must be upheld if there is any

17  reliable evidence in the record that could support the conclusion reached by the fact finder.

18  Powell v. Gomez, 33 F.3d 39, 40 (9th Cir. 1994) (citing Hill, 472 U.S. at 455-56 and Cato v.

19  Rushen, 824 F.2d 703, 705 (9th Cir. 1987)).  See also Burnsworth v. Gunderson, 179 F.3d 771,

20  773 (9th Cir. 1990); Zimmerlee v. Keeney, 831 F.2d 183, 186 (9th Cir. 1987).  Determining

21  whether this standard is satisfied does not require examination of the entire record, independent

22  assessment of the credibility of witnesses, or the weighing of evidence.  Toussaint v. McCarthy,

23  801 F.2d 1080, 1105 (9th Cir. 1986), abrogated in part on other grounds by Sandin v. Connor,

24  515 U.S. 472 (1995).  Indeed, in examining the record, a court is not to make its own assessment

25  of the credibility of witnesses or re-weigh the evidence.  Hill, 472 U.S. at 455.  The question is

26  /////

8

1   whether there is any reliable evidence in the record that could support the decision reached.

2   Toussaint, 801 F.2d at 1105.

3           Where a protected liberty interest exists, the requirements imposed by the Due

4   Process Clause are "dependent upon the particular situation being examined." Hewitt v. Helms,

5   459 U.S. 460, 472 (1983). The process due is such procedural protection as may be "necessary to

6   ensure that the decision . . . is neither arbitrary nor erroneous." Washington v. Harper, 494 U.S.

7   210, 228 (1990). In identifying the safeguards required in the context of disciplinary

8   proceedings, courts must remember "the legitimate institutional needs of assuring the safety of

9   inmates and prisoners" and avoid "burdensome administrative requirements that might be

10  susceptible to manipulation." Hill, 472 U.S. at 454-55. The requirements of due process in the

11  prison context involve a balancing of inmate rights and institutional security concerns, with a

12  recognition that broad discretion must be accorded to prison officials. Wolff, 418 U.S. at

13  560-63; see also Baxter, 425 U.S. at 324.

14  IV.  Analysis

15          A.  False Evidence

16          As described above, petitioner alleges that the rules violation report issued by

17  Officer Harwood was "false." He provides evidence that another officer may have actually

18  written the draft of the report. Petitioner alleges that several of the allegations in the report, such

19  as the allegation that petitioner was staggering while escorted to a prison office, and that he

20  refused to submit to urinalysis testing, were added by Officer Harwood to the report and are

21  false. Petitioner also appears to be alleging that because Officer Harwood was not the "actual

22  reporting C.O.," his testimony at the disciplinary hearing was necessarily false. The question

23  before the court is whether these circumstances violated petitioner's right to due process.

24          The Second Circuit has held in the context of an action brought pursuant to 42

25  U.S.C. § 1983 that "[a]lthough prisoners are entitled to be free from arbitrary action and conduct

26  of prison officials, the protections against arbitrary action 'are the procedural due process

9

1   requirements as set forth in <u>Wolff v. McDonnell</u>.'"   <u>Freeman v. Rideout</u>, 808 F.2d 949, 952 (2nd

2   Cir. 1986) (quoting <u>Hanrahan v. Lane</u>, 747 F.2d 1137, 1140 (7th Cir. 1984)).   Prisoners have "no

3   constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which

4   may result in the deprivation of a protected liberty interest," but they do have "the right not to be

5   deprived of a protected liberty interest without due process of law."   808 F.2d at 951.   <u>See</u> <u>also</u>

6   <u>Sprouse v. Babcock</u>, 870 F.2d 450, 452 (8th Cir. 1989) (finding inmate's claims based upon

7   falsity of charges brought by a prison counselor did not state a constitutional claim).   Therefore,

8   "[w]hile in no way condoning "trumped up charges" or the use of "falsified documents" in any

9   official proceeding, even the filing of false disciplinary charges is not itself a due process

10  violation, provided the procedural due process requirements of <u>Wolff</u> are observed."   <u>Deadmon</u>

11  <u>v. Grannis</u>, No. 06cv1382-LAB (WMC), 2008 WL 595883, *10 (S.D. Cal. Feb. 29, 2008); <u>see</u>

12  <u>also</u> <u>Saenz v. Spearman</u>, No. 1:09-cv-00557-GSA-YNP (PC), 2009 WL 2365405, * 8 (E.D. Cal.

13  July 29, 2009) ("The Due Process Clause does not provide a guarantee that Plaintiff will be free

14  from fabricated accusations of disciplinary violations.").   <u>Cf.</u> <u>Napue v. Illinois</u>, 360 U.S. 264

15  (1959) (a criminal conviction obtained using knowingly perjured testimony violates due process).

16          Notwithstanding petitioner's accusation that the evidence against him at the

17  disciplinary hearing was "false" and "fraudulent," in violation of the Due Process Clause, this

18  court concludes that petitioner received all the process that was due to him in connection with the

19  2004 disciplinary charge and hearing thereon.   Petitioner received advance written notice of the

20  charge against him as well as a written statement of the evidence relied upon by prison officials

21  and the reasons for the disciplinary action taken.   <u>See</u> <u>Wolff</u>, 418 U.S. at 563.   Although

22  petitioner was not allowed to call live witnesses, the hearing officer stipulated to their proposed

23  testimony as proffered by petitioner.   (Pet., Ex. D.)   Petitioner could presumably have questioned

24  Officer Harwood, who appeared in person at the hearing.   Petitioner was also allowed to present

25  his own seven-page statement explaining his defense to the disciplinary charge.   (<u>Id.</u>)

26  /////

1    Here, the record also demonstrates there was "some evidence in the record that

2    could support the conclusion reached by the disciplinary board." Hill, 472 U.S. at 455.  Officer

3    Harwood testified that he found inmate manufactured alcohol in petitioner's cell.  Although

4    petitioner has provided evidence that another correctional officer may have written a rough draft

5    of the rules violation report, there is no evidence that Officer Harwood's testimony in this regard

6    was "false" or that any of the allegations in the rules violation report were fabricated.  There is

7    also no indication that evidence was planted in petitioner's cell or was discarded by prison

8    officials in bad faith.  In any event, this court may not relitigate the merits of the disciplinary

9    hearing by reassessing the hearing testimony or the credibility of Officer Harwood, or by

10   weighing his testimony against petitioner's stipulated witnesses or his own written statement.

11   Further, none of the evidence before this court indicates that petitioner was

12   convicted of a disciplinary violation that he did not commit.  On the contrary, all of the evidence

13   before this court supports the finding of the disciplinary fact-finder that petitioner possessed

14   alcohol in his cell.  To the extent petitioner may be arguing that Officer Crawford, and not

15   Officer Harwood, conducted the search of his cell, the record does not support that argument.  In

16   the "statement of events" that petitioner submitted at the disciplinary hearing, petitioner stated

17   that Officer Harwood performed the search of his cell; placed him in restraints; told petitioner

18   that he smelled alcohol and that he was going to place petitioner in segregated housing; escorted

19   him to an office and placed him in a holding cage; showed petitioner two bottles and asked if he

20   knew "what they were for;" and gave him a sobriety test.  (Pet., Ex. E at 1.)  Accordingly, there

21   appears to be no dispute that Officer Harwood searched petitioner's cell and accused petitioner of

22   possessing alcohol in his cell.

23   In support of his due process claim, petitioner cites the decisions in Griffin v.

24   Spratt, 969 F.2d 16 (3rd Cir. 1992) and Morrison v. Lefevre, 592 F.  Supp. 1052, 1070 (D.C.N.Y.

25   1984).  In Griffin, a state prisoner brought a civil rights action against prison officials, alleging

26   that he was placed in disciplinary custody for possession of inmate manufactured alcohol in

11

1   violation of due process.  The United States District Court for the Eastern District of

2   Pennsylvania found that the failure of prison officials to preserve the alleged fermented beverage

3   until the disciplinary hearing violated the prisoner's right to due process.  Griffin v. Spratt, 768 F.

4   Supp. 153, 157 (E.D. Pa. 1991).  On appeal, the Third Circuit held that absent evidence the

5   beverages were discarded in bad faith, failure to preserve them until the time of the hearing did

6   not violate due process.  Griffin, 969 F.2d at 21.  The Court of Appeals also concluded that

7   sufficient evidence supported the petitioner's disciplinary conviction even though the hearing

8   examiner based his decision regarding the nature of the beverages exclusively on the testimony

9   of one correctional officer.  969 F.2d at 22.  The holding of the Third Circuit in Griffin does not

10  support petitioner's claims.  As noted above, there is no evidence in this case that prison officials

11  failed to preserve the alcohol found in petitioner's cell in bad faith, or that insufficient evidence

12  supported petitioner's conviction on the rule violation charge.

13          In Morrison, correctional officers who planted and relied on false evidence in

14  transferring plaintiff to segregated housing in retaliation for protected litigation activities were

15  found liable in a civil rights action for depriving the plaintiff of his liberty without due process of

16  law.  The court in that case concluded that "[h]owever minimal may be the process due to

17  prisoners before segregation, that process is insufficient when it has been contaminated by the

18  introduction through state action of false inculpatory evidence."  Morrison, 592 F. Supp. at 1073.

19  In Morrison, however, the plaintiff did not receive a hearing.  Rather, it was the mere filing of the

20  charge itself that caused the plaintiff to be segregated.  In the present case, petitioner was granted

21  a disciplinary hearing and was provided a full opportunity to rebut the charges he now claims

22  were false.  The holding in the Morrison case, therefore, does not support petitioner's claims in

23  the instant petition.  See Freeman v. Rideout, 808 F.2d at 952-53 (distinguishing Morrison).

24          B.  Documentary Evidence

25          Petitioner also claims that prison authorities violated his right to due process when

26  they refused to provide him with documents and other discovery requested in the seven-page

1  "statement" he submitted at the disciplinary hearing.  As described above, petitioner asked for (1)

2  the video from the exercise yard at the time of the relevant events; (2) the results of the sobriety

3  test administered on November 16, 2004; (3) the receipt for the search of petitioner's cell; (4) the

4  original handwritten drafts of the rules violation report at issue; and (5) the "log sheet" reflecting

5  the authors of any drafts of the rules violation report.  (Pet., Ex. E at 6.)  The rules violation

6  report states that the requested videotape had been destroyed and was no longer available.

7  Officer Harwood testified that petitioner refused to take a sobriety test on the day in question.[1]

8  Petitioner has now received the original handwritten draft of the rules violation report and, as

9  discussed above, that document does not demonstrate, nor does it even suggest, that the

10  allegations against petitioner were "false."  Under these circumstances, even though petitioner

11  was not provided with the discovery he requested at the hearing, he has failed to demonstrate that

12  his inability to obtain this evidence resulted in any fundamental unfairness.  See Keel v. Dovey,

13  459 F. Supp. 2d 946, 959 (C.D. Cal. 2006) (due process satisfied where prisoner was provided

14  notice of the evidence to be relied upon at the disciplinary hearing and no further discovery need

15  be granted).  This court does not find that the officials' failure to provide the evidence requested

16  by petitioner in his "statement" rose to the level of a due process violation.

17         In support of his claim in this regard, petitioner cites the decision in Brady v.

18  Maryland, 373 U.S. 83 (1963).  In Brady, the United States Supreme Court held "that the

19  suppression by the prosecution of evidence favorable to an accused upon request violates due

20  process where the evidence is material either to guilt or to punishment, irrespective of the good

21  faith or bad faith of the prosecution." 373 U.S. at 87.  Assuming arguendo that the holding in

22  /////

23  /////

24  /////

25

26      [1] In any event, whether or not petitioner was intoxicated has little bearing on whether he possessed alcohol in his cell.

13

1  <u>Brady</u> applies to prison disciplinary hearings[2], petitioner is not entitled to relief in this case.  In

2  order to demonstrate a <u>Brady</u> violation, one must show that the requested evidence is "favorable

3  to the accused," that it was "suppressed by the State, either willfully or inadvertently," and that

4  prejudice ensued.  <u>Strickler v. Greene</u>, 527 U.S. 263, 281-82 (1999).  Petitioner has failed to

5  demonstrate that any of those factors exist here.

6            Accordingly, for all of the reasons described above, petitioner is not entitled to

7  habeas relief on this due process claim.

8            C.  <u>State Law Claims</u>

9            Petitioner also claims that he did not receive a cell search slip and that the rules

10  violation report did not specify that a supervisor had verified the presence of contraband in his

11  cell.  (P&A at 13.)  These claims are based on alleged violations of state law and are not

12  cognizable in a federal habeas corpus action.  <u>Engle</u>, 456 U.S. at 119.  To the extent petitioner is

13  arguing that the failure by prison officials to comply with these procedural requirements cast

14  doubt on the legitimacy of the evidence against him in connection with the rule violation charge,

15  his argument must be rejected.  As explained above, this court has concluded that "some

16  evidence" supported petitioner's disciplinary conviction and that his right to due process was not

17  violated at the December 8, 2004, hearing.

18                            CONCLUSION

19            Accordingly, IT IS HEREBY ORDERED that petitioner's application for a writ of

20  habeas corpus is denied.

21  DATED: September 22, 2009.

22

23  DAD:8
    campo1662.hc

                    _____
                    DALE A. DROZD
                    UNITED STATES MAGISTRATE JUDGE

24

25      [2] At least one Circuit Court has held that <u>Brady</u> applies to prison disciplinary proceedings
    and requires disclosure of material, exculpatory evidence to a prisoner in connection with a
26  disciplinary hearing unless such disclosure would unduly threaten institutional concerns.  <u>See</u>
    <u>Piggie v. Cotton</u>, 344 F.3d 674, 678-79 (7th Cir. 2003).